# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JAMES YIU-TIN CHING, M.D., | )<br>) |
| Plaintiff, | )<br>) Case No. 08 C 1155<br>) |
| v. | ) Judge Ruben Castillo<br>) |
| JOSEPH PORADA, M.D., and PARAMOUNT<br>CONSULTING SERVICES, INC., | )<br>)<br>) |
| Defendants. | )<br>) |

## MEMORANDUM OPINION AND ORDER

Plaintiff, James Yiu-Tin Ching, M.D., ("Dr. Ching") filed this diversity action against Joseph Porada, M.D., ("Dr. Porada") and Paramount Consulting Services, Inc. ("Paramount") (collectively, "Defendants") alleging usurpation of corporate opportunity, breach of fiduciary duty, and conversion. (R. 1, Compl.) Defendants contend that the Court should dismiss this lawsuit for lack of standing, or, alternatively, for failure to state a claim. For the following reasons, Dr. Ching's Complaint is dismissed without prejudice.

## RELEVANT FACTS[1]

Dr. Ching and Dr. Porada are radiologists. (R. 1, Compl. ¶¶ 6-7.) Dr. Ching is a citizen of California, while Dr. Porada is a citizen of Illinois. (*Id.* ¶¶ 1-2.) Paramount is an Illinois corporation with its principal place of business Illinois. (*Id.* ¶ 3.)

In 1986, Dr. Ching began working as a radiologist at Our Lady of Resurrection Hospital ("OLR") in Chicago. (*Id.* ¶ 6.) In 1988, Dr. Porada began working as a radiologist at OLR. (*Id.*

---

[1] These facts are derived from Plaintiff's Complaint, as on a motion to dismiss, the Court assumes all well-pleaded allegations in the complaint to be true and draws all reasonable inferences in the plaintiff's favor. *Christensen v. County of Boone, Illinois*, 483 F.3d 454, 457 (7th Cir. 2007).

¶ 7.) Shortly after arriving at OLR, Dr. Porada approached Dr. Ching and two other radiologists at OLR, Dr. Heath and Dr. Rezai, about working for Dr. Porada's closely held corporation, Addison Radiology Associates, S.C. ("ARA"). (*Id.* ¶¶ 8, 50.) Dr. Porada proposed that ARA would contract with OLR to provide radiology services, and Drs. Ching, Heath, and Rezai would become employees of ARA instead of OLR. (*Id.* ¶ 9.) Dr. Porada promised Drs. Ching, Heath, and Rezai that after three years of employment with ARA they would become equal shareholders in ARA. (*Id.* ¶ 10.) Dr. Ching accepted Dr. Porada's proposal and began working for ARA. (*Id.* ¶ 11). In 1991, Drs. Ching, Heath, and Rezai became shareholders of ARA. (*Id.* ¶ 12). Dr. Porada assured them that all four doctors were receiving the same financial benefits and compensation. (*Id.* ¶¶ 13-14.)

In 1997, the four doctors formed Midwest Radiology Associates, S.C. ("Midwest") for the purpose of collecting revenues from the radiology clinics where the doctors practiced. (*Id.* ¶ 15.) Dr. Porada advised each doctor that they were equal shareholders in Midwest. (*Id.*) In 2001, the four doctors expanded their practice to provide radiology services to Morris Hospital. (*Id.* ¶ 16.) According to the Complaint, Dr. Porada then "handled" the formation of a third corporation, Morris Radiology Associates S.C ("MRA"), in which Dr. Porada assured Drs. Ching, Heath, and Rezai they were equal shareholders and would receive equal compensation. (*Id.* ¶¶ 16-17.) Dr. Porada oversaw the various financial operations of ARA, Midwest, and MRA (collectively, the "Medical Practices"), including advising Drs. Ching, Heath, and Rezai on the Medical Practices' financial performance and how much the year's compensation would be for each doctor. (*Id.* ¶¶ 14, 51.)

In 2006, Drs. Ching, Heath, and Rezai began to suspect that Dr. Porada was lying about

2

the compensation they were receiving and asked Dr. Porada to see the Medical Practices' financial records. (*Id.* ¶¶ 19-20.) Despite repeated requests, Dr. Porada did not produce the financial records, and in April 2007, Dr. Ching left ARA. (*Id.* ¶¶ 23-24.)

In November 2007, Dr. Porada produced selected records for ARA and MRA. (*Id.* ¶ 27.) The tax returns revealed that between 1996 and 2003, Dr. Porada distributed almost $9 million in additional compensation to himself without the knowledge or consent of Drs. Ching, Heath, or Rezai. (*Id.* ¶ 33). The financial records also disclosed that, for the period 1996 through 2006, Dr. Porada secretly transferred over $12 million from the Medical Practices to Defendant Paramount Consulting Services, Inc. ("Paramount"), an entity which the other doctors had not known existed. (*Id.* ¶¶ 30, 32.) The Medical Practices paid Paramount an average of $1.4 million per year, representing between 25% to 42% of the gross receipts of the Medical Practices. (*Id.* ¶ 40.) Dr. Porada never advised Drs. Ching, Heath, and Rezai of these payments. (*Id.* ¶ 45.)

Dr. Ching since learned that Paramount was formed in 1989, and that Dr. Porada's eighty-year-old mother, Florence Porada ("Mrs. Porada"), was listed as its registered agent, Secretary, and President. (*Id.* ¶¶ 31, 42.) Mrs. Porada has no actual pecuniary or ownership interest in Paramount, has no role in Paramount's operations, and Paramount does not pay her any salary. (*Id.* ¶¶ 38, 42-43.) From 1996 through 2006, however, Paramount paid Dr. Porada, its only employee, a salary of between $500,000 and $1.1 million per year. (*Id.* ¶¶ 39, 41.)

On February 26, 2008, Dr. Ching initiated this action in federal court against Dr. Porada and Paramount. (R.1, Compl.) Subsequent to the filing of this suit, Drs. Heath and Rezai, who continue to practice with Dr. Porada, filed a lawsuit against Dr. Porada in Cook County Circuit Court to recover sums that they allege should have been paid to them. (R. 24, Ching Resp. to

3

Mot. to Dismiss at 4 n.1.)

## ANALYSIS

Dr. Ching's Complaint contains three state law counts: usurpation of corporate opportunity by Dr. Porada and Paramount for forming Paramount without the other doctors' consent and without affording them the opportunity to profit from that venture; breach of fiduciary duty owed by Dr. Porada to the three other shareholders of the Medical Practices; and conversion by Dr. Porada for improperly taking funds from the Medical Practices over his equal proportionate share. Dr. Ching requests that the Court impose a constructive trust on any funds Dr. Porada improperly transferred to Paramount and award Dr. Ching an amount in excess of $3 million, plus interest and punitive damages. (R. 1, Compl. ¶¶ 10-11.) Defendants move to dismiss the suit for lack of standing, or alternatively, failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (R. 19, Mem. in Supp. of Mot. to Dismiss.)

Under the rubric of "standing," Defendants argue that Dr. Ching may not bring a direct action against Dr. Porada and Paramount; rather, they contend that Dr. Ching's allegations must be brought as a derivative action on behalf of the Medical Practices. Contrary to Defendants' contentions, this is not a standing issue because Dr. Ching has alleged an injury in fact. *Frank v. Hadesman and Frank, Inc.*, 83 F.3d 158, 159 (7th Cir. 1996). Instead, Defendants' argument falls under Federal Rule of Procedure 17(a), which requires that "[e]very action shall be prosecuted in the name of the real party in interest." Thus, the question is whether Dr. Ching is the "real party in interest;" *i.e.*, do the claims in Dr. Ching's lawsuit belong to Dr. Ching personally or to the Medical Practices? *Frank*, 83 F.3d at 159. This is a question of state law.

4

*Id.* The parties agree that Illinois law applies.[2]

Under Illinois law, an action for harm to the corporation must be brought in the corporate name as a derivative action unless an investor has suffered "a distinct personal injury." *Id.* at 160. Examples of distinct personal injuries include a shareholder who alleges that board members have refused to return stock pledged to secure a debt after the loan has been paid, or a shareholder-employee who contests his discharge from employment, or a unique contract between the shareholder and the company that was dishonored. *Id.* at 160-61.

Dr. Ching does not allege any such distinct personal injuries. Rather, Dr. Ching alleges that Dr. Porada breached his fiduciary duty to the other shareholders of the Medical Practices, misappropriated the corporations' assets, and usurped business opportunities from the corporations. These are classic injuries to the corporation that must be remedied in a shareholder derivative action. *See, e.g., Elmhurst Consulting, LLC v. Gibson*, 219 F.R.D. 125, 128 (N.D. Ill. 2003) (finding that a claim that a corporate officer breached his fiduciary duty by misappropriating corporate assets and usurping corporation's business opportunities are classic examples of injuries to the corporation that can only be brought through a shareholder derivative suit on behalf of the corporation); *see also Small v. Sussman*, 713 N.E.2d 1216, 1220 (Ill. App. Ct. 1999) (defendant officer/director's diversion of profits from corporation to other entities which he owned was classic injury to corporation). These types of injuries "injure[] all investors alike, so the action is derivative." *Frank*, 83 F.3d at 160 (citing *Seinfeld v. Bays*, 595 N.E.2d 69 (Ill. App. Ct. 1992)).

---

[2] "Courts do not worry about conflict of laws unless the parties disagree on which state's law applies." *Wood v. Mid-Valley, Inc.*, 942 F.2d 425, 426-27 (7th Cir. 1991).

5

In fact, Dr. Ching recognizes that his injuries are indistinguishable from the injuries suffered by Drs. Heath and Rezai. He alleges that all of the shareholder doctors were injured equally based upon the agreement that each doctor would receive equal compensation and benefits from the annual receipts of the Medical Practices. (*See* R. 1, Compl. ¶¶ 12-13 (alleging that all four shareholder doctors held an equal ownership interest of 25% of the Medical Practices).) The Complaint does not allege that Dr. Porada owed any duty to Dr. Ching separate from or additional to any duty he owed the other shareholders.

Nevertheless, Dr. Ching argues that he is entitled to bring a direct action because Dr. Porada's and Paramount's alleged misappropriation of 25% to 42% of the annual gross receipts of the Medical Practices injured him, not the Medical Practices, and he seeks return of these monies to him, not the Medical Practices. (R. 24, Resp. to Mot. to Dismiss at 8-9.) Dr. Ching, however, may not seek the return of these monies for himself because of the risk that the direct shareholder action may deny other investors their share of the recovery. *Frank*, 83 F.3d at 162. In fact, even if Dr. Ching had suffered disproportionate harm from the other shareholder doctors—which he does not allege—his action would still be derivative in nature. *Id.* at 160-61.

Moreover, Dr. Ching acknowledges that another problematic consequence of allowing direct suits has already occurred in this case: "the risk that direct litigation may multiply the number of suits with different investors going their own ways." *Id.* at 162. Drs. Heath and Rezai have filed a parallel lawsuit in Cook County. (R. 24, Resp. to Mot. to Dismiss at 4.) "[A]llowing a derivative action to proceed as a direct one allows for the possibility of multitudinous litigation brought by shareholders and the corporation, with the corresponding risk of double-counting (and double-punishment). Thus, maintaining a clear distinction between

6

direct and derivative actions keeps everything in its right place." *Massey v. Merrill Lynch & Co., Inc.*, 464 F.3d 642, 647 (7th Cir. 2006).

In addition, despite Dr. Ching's arguments to the contrary, the Seventh Circuit has declined to establish a special rule for closed corporations that would permit wronged investors direct access to court.[3] *Id.* at 161. In fact, in *Frank*, the Seventh Circuit held that the case should have been brought as a derivative action by a corporation consisting of only two named shareholders, where one shareholder had attempted to sue the other shareholder for allegedly transferring corporate assets to a new firm, from which the plaintiff had been excluded. *Id.* at 159, 161.

Furthermore, "[s]omeone who wants a state to change its law must ask the state. . . . Federal courts acting under the diversity jurisdiction are not the right forums for departures from established rules," which do not give the courts discretion to treat a derivative injury as it it were direct. *Id.* at 162. Illinois law on the issue of who is the real party in interest when assets and opportunities are usurped from a closed corporation has not changed since the Seventh Circuit analyzed the issue in *Frank*. *See, e.g., Caparos v. Morton*, 845 N.E.2d 773, 782 (Ill. App. Ct. 2006); *Hamilton v. Conley*, 827 N.E.2d 949, 955 (Ill. App. Ct. 2005); *LID Assocs. v. Dolan*, 756 N.E.2d 866, 885 (Ill. App. Ct. 2001).

Therefore, Dr. Ching's claims must be brought as a shareholder derivative suit on behalf of the Medical Practices rather than as a direct action. The jurisdictional consequence of this finding is that in any future litigation, the Medical Practices would appear as plaintiffs, thus

---

[3] Although Dr. Ching uses the terms "shareholder" and "partner" interchangeably throughout his complaint, the fact remains that the Medical Practices were formed as closed corporations and not as partnerships.

7

extinguishing diversity jurisdiction if the Medical Practices are incorporated in Illinois. *See Frank*, 83 F.3d at 160. The Complaint, however, does not allege the state of incorporation of the Medical Practices, and thus the Court cannot at this time determine whether diversity jurisdiction exists.

For the foregoing reasons, Defendants' motion to dismiss is granted under Federal Rule of Civil Procedure 17, and Dr. Ching's Complaint is dismissed without prejudice. (R. 18, Mot. to Dismiss.) If diversity jurisdiction exists in light of this opinion, the Court gives Dr. Ching twenty-one days to file an amended complaint as a derivative action on behalf of the Medical Practices in this Court. In the absence of federal jurisdiction, Dr. Ching may pursue a derivative action in state court.

Date: June 20, 2008      ENTERED: _____
                         Ruben Castillo
                         United States District Judge